UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| **GREG B. SCHANKIN**, <br><br> Plaintiff, <br><br> v. <br><br> **COMMERCIAL STEEL TREATING CORPORATION**, and **HCI EQUITY PARTNE**RS, <br><br> Defendants. | 2:19-cv-12909-TGB-APP <br><br> HON. TERRENCE G. BERG <br><br><br> **ORDER GRANTING MOTION TO COMPEL (ECF NO. 24)** |

This is an employment discrimination case where Plaintiff Greg Schankin alleges that Defendant Commercial Steel terminated him from his position as a human resources director solely because of his age. Plaintiff brought this action alleging violations of the Age Discrimination in Employment Act ("ADEA") and the Elliot-Larsen Civil Rights Act ("ELCRA"). Currently before this Court is Plaintiff's Motion to Compel Deposition Testimony (ECF No. 24), which asserts that conversations between Plaintiff Schankin and Defendants' inhouse counsel are not privileged. Having reviewed the briefing, support materials, and relevant case law, Plaintiff's Motion to Compel Deposition Testimony will be **GRANTED**.

## I.      BACKGROUND

In 1997, Plaintiff Greg Schankin was hired as human resource manager by Defendant Commercial Steel. ECF No. 1, PageID.2. Commercial Steel also owned Curtis Metal Finishing Company ("Curtis"). Both companies were acquired by HCI Equity Partners in July of 2015. ECF No. 1, PageID.3. Together, HCI owns Commercial Steel, Curtis, Tribar Manufacturing, and Adept Plastic Finishing. Post-acquisition, Plaintiff Schankin served as human resource director for all four companies.

Mr. Schankin alleges that beginning in April of 2018 older employees were "being terminated for no reason" and he grew concerned that Defendants were discriminating against employees on the basis of their age. ECF No. 1, PageID.3. Plaintiff contends he expressed concerns about the possible discrimination "repeatedly" to both Mike Zimmerman (general manager at Curtis), Jeff Myles (general counsel), and Jeff Wilson (president and CEO of all four companies). ECF No. 1, PageID.3-4.

Plaintiff alleges that on July 31, 2018, he learned that his name had been removed from the corporate organization chart without his prior knowledge. ECF No. 1, PageID.4. He also learned that another individual, Carolyn Espinoza, had listed herself as the human resource director on LinkedIn. According to Plaintiff, on August 3, 2018 president and CEO Wilson informed Mr. Schankin that he was reorganizing the human resources function from "just Plaintiff to four generalists," and—

2

despite the fact he was adding generalists—Plaintiff's employment was terminated. ECF No. 1, PageID.4. Mr. Schankin was fifty-six years old at the time of his termination. ECF No. 1, PageID.5.

During discovery, Plaintiff took the deposition testimony of Jeff Myles, Defendants' corporate counsel. ECF No. 24-2, PageID.197. At the deposition, Plaintiff's counsel questioned Mr. Myles about his conversations with Plaintiff regarding the potential termination of three individuals from Commercial Steel Treating Corporation. *Id.* at PageID.207. In response to questioning, Mr. Myles acknowledged that Plaintiff discussed with him a "potential concern" that the termination of the three individuals involved age discrimination. *Id.* Mr. Myles also testified that he had potential concerns regarding age discrimination and the three employees' terminations. Following this line of questioning, Plaintiff's counsel and Defendants' counsel had the following exchange:

> Q. Did you offer an opinion in terms of the legality of what was being done to these three gentlemen?
>
> MR. VAN SUILICHEM: Objection. Mr. Myles served as a general counsel for the company, and any advice he gave to Mr. Schankin or anybody else regarding legal matters is privileged, and I direct not to answer that question.
>
> MR. GOLDEN: Okay. Well, we'll make a separate record, or at least a notation he's having a discussion with someone who's not his employer. He's not giving him any legal advice. And I will challenge that. So I won't follow through because you directed him not to answer. But that'll be something that we'll have to iron out in court.
>
> MR. VAN SUILICHEM: I understand.

. . .

BY MR. GOLDEN:
Q. Was it your opinion that the motivation behind these firings was potentially illegal?

MR. VAN SUILICHEM: Objection. Lack of foundation. He testified he was not part of the decision-making process.

MR. GOLDEN: Don't testify. You want to object, you can object.

MR. VAN SUILICHEM: Okay.

ECF No. 24-2, PageID.207-08.

Following the depositions, Plaintiff filed the instant motion seeking a Court order to compel Mr. Myles's deposition testimony regarding his communications with Plaintiff about the alleged observed age discrimination. ECF No. 24.

## II.   LEGAL STANDARD

The attorney-client privilege is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 595 (6th Cir. 2012) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Whether the attorney-client privilege applies, is a mixed question of law and fact. *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005).

*In Reed v. Baxter*, the Sixth Circuit outlined the elements of the attorney-client privilege as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

134 F.3d 351, 355-56 (6th Cir. 1998). The privilege is not absolute, however, and should be narrowly construed as it "reduces the amount of information discoverable during the course of the lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir.1997); *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir.1996).

Both corporations and individuals may assert the attorney-client privilege. *Reed*, 134 F.3d at 356 (referencing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)). *See also Ross*, 423 F.3d at 600 (6th Cir.2005). "Where a person who happens to be an attorney is not acting in that capacity, the privilege does not attach," and "[c]ommunications between an attorney and client which relate to business, rather than legal matters, do not fall within the protection of the attorney-client privilege." *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113, 116 (E.D. Mich. 2019) (quoting *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 2006 WL 1851018, at *2 (E.D. Mich. July 5, 2006)).

## III.   ANALYSIS

According to Plaintiff, Mr. Myles's conversations with Mr. Schankin are not privileged because Mr. Myles was not acting as a legal advisor to Defendants at the time the statements were made nor was Mr. Schankin seeking Mr. Myles's legal counsel. Rather, Plaintiff contends that he and

Mr. Myles "were commenting upon discrimination they perceived" regarding Defendants' employment decisions. ECF No. 24, PageID.193.

Defendants assert, in response, that the attorney-client privilege protects Mr. Myles's statements to Plaintiff because an attorney-client relationship existed between Defendant Commercial Steel and Mr. Myles at the time communications took place. ECF No. 28, PageID.264. According to Defendants, Mr. Myles's statements regarding the alleged discriminatory practices are privileged because "Plaintiff was acting as an agent of Defendants, seeking legal advice from the General Counsel on behalf of Defendants, in his role as the Company's Human Resource Director." ECF No. 28, PageID.266.

This is admittedly a complex issue: As Defendants themselves explain, "[t]his is not a case where privilege is being raised to protect information that was provided to an attorney, but instead to protect the attorney's statement of his legal opinion." ECF No. 28, PageID.264. The question of whether this information is protected by attorney-client privilege appears to turn on the first and second elements of the Sixth Circuit's test: 1) whether legal advice of any kind was being sought and (2) if so, whether it was from a professional legal adviser in his capacity as such?

It is clear that Mr. Myles's statements regarding age discrimination issues did not arise at the prompting of the corporation or due to an internal investigation. *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981). Neither party provides any evidence that Mr. Myles was

prompted to examine this question by the CEO, Board of Directors, or any other authority within the corporation. Therefore, it cannot be said that *Defendants* were seeking legal advice when Mr. Myles communicated with Plaintiff.

Defendants argue that "Plaintiff was acting as an agent of Defendants, seeking legal advice from the General Counsel on behalf of Defendants." ECF No. 28, PageID.266. But the record evidence does not support this position. Though Mr. Myles served as the sole in-house counsel of Defendants, the record shows he played very little role in the decision-making processes for terminating employees. *See* ECF No. 24-2, PageID.201, 206. In fact, Mr. Myles noted that in most instances— including the three specific terminations at issue—he did not provide legal advice to the CEO as to what to do regarding terminations. ECF No. 24-2, PageID.201-02. Myles further testified that he was *not* typically involved in legal issues in the workplace, such as OSHA violations, which were usually "covered by the direct frontline people," including plant management and human resources. ECF No. 24-2, PageID.201. In fact, the occasions when Mr. Myles's legal advice was sought pertaining to an employee's termination were so few that he could easily recount the "couple" that came to mind during his deposition over his 32-year history with the company. ECF No. 24-2, PageID.202. On this record, it appears that Mr. Myles did not typically get involved in responding to requests from the Defendants for legal advice on these kinds of employment issues, whether made directly or through Plaintiff.

There is also no evidence that Plaintiff was acting at the direction of Defendants in communicating with Mr. Myles about the alleged instances of discrimination that are currently at issue. In fact, Plaintiff describes his discussions with Mr. Myles as follows:

> There were conversations. I mean, I saw each other every day. We were in the same office. So, you know, to point out one specifically, I mean, it was a general conversation that would come up now and then just like it did with Craig.

ECF No. 24-3, PageID.239. Defendants present no evidence to the contrary. Rather than formal meetings or conversations undertaken at the direction of management, these communications appear to be general, informal, and based on Plaintiff's own initiative. Finally, Plaintiff contends he expressed concerns about discrimination "repeatedly" to the general manager of Curtis and the president and CEO of all four companies. ECF No. 1, PageID.3-4. Far from suggesting an agency relationship in which the company managers were deputizing Plaintiff to seek counsel from the inhouse lawyer on the situation, the record shows that Defendants failed to investigate the potential problems regarding age discrimination and failed to seek legal advice from Mr. Myles regarding such potential problems. This appears to undermine Defendants' position as prompting Plaintiff to seek out Mr. Myles's legal opinion regarding age discrimination is inconsistent with Defendants own lack of action regarding the potential problem. *See Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 571 (6th Cir. 2015) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)) ("In order for the privilege to attach to communications between in-house counsel and an

organization's employee, the employee must be 'sufficiently aware' that he or she is being questioned in order to provide the organization with legal advice."). Here, the record contains no support for the argument that Plaintiff was acting as an "agent" of Defendants when engaging in conversations about potential age discrimination.

Next, the Court must consider if Mr. Schankin himself was seeking legal advice from "a professional legal adviser in his capacity as such." Mr. Schankin says that he had multiple conversations "with Jeff up until the day [he] left" . . . "[a]bout a number of things that were going on including age discrimination, yes." ECF No. 24-3, PageID.239; ECF No. 24-3, PageID.239 ("I mean, it was a general conversation that would come up now and then . . ."). But the testimony does not support the idea that these conversations involved Mr. Schankin seeking legal advice as required under *Reed*. 134 F.3d at 355. Nor is there any evidence that during these conversations Mr. Myles was acting in his capacity as an attorney—they were not consultations about potential HR actions that Mr. Schankin was taking on behalf of the company; rather, they were outside of meetings and in "general conversation[s]." See *Carhartt*, 333 F.R.D. at 116. Mr. Schankin says that he reported to Mr. Myles that he believed management was engaging in age discrimination, and Mr. Myles "didn't disagree with it," and, when asked if Mr. Myles "acknowledged" there was age discrimination, Schankin stated, "Oh, he did acknowledge there was age discrimination. Yes, absolutely. Just as a refresher, he is the corporate counsel." ECF No. 24-3, PageID.239, Dep. Tr. p. 102.

As to Mr. Myles, he testified that he could not relate his discussions about age discrimination "to a meeting, because [he] wasn't there," indicating that Mr. Myles was not part of any meetings where the potential termination of the individuals at issue were discussed, but noted that a conversation did occur between him and Mr. Schankin. *See* ECF No. 24-2, PageID.207. Mr. Myles testified that he was unable to recall if Mr. Schankin asked for his opinion during this conversation. ECF No. 24-2, PageID.207. And as to the key question of whether Mr. Myles "offered any opinion" as to the legality of the separation of the three employees, he made no answer because defense counsel interposed an objection.

On this record, it does not appear that Plaintiff intended to seek legal advice. And the nature of Mr. Myles's representation was that he had little to no involvement regarding the decision to terminate employees except to draft settlement agreements after the decisions were made. *See* ECF No. 24-2, PageID.201. In this context, it would not make sense for Plaintiff to seek out Mr. Myles's legal counsel when he was normally uninvolved in such matters. Neither Mr. Schankin nor Mr. Myles testified that Schankin sought Myles's legal advice. Mr. Myles cannot recall whether he was asked his opinion, and Mr. Schankin says that *he* told Mr. Myles there was age discrimination, who "acknowledged" that it was true. Because Mr. Schankin, as an individual or representative of Defendants, did not engage in the communications at issue for the purpose of obtaining legal advice, if—as Mr. Schankin

10

claims—Mr. Myles "acknowledged" the existence of age discrimination to Mr. Schankin in informal conversations with him, then Mr. Myles may testify to that fact without violating the attorney-client privilege.[1]

## CONCLUSION

For the reasons outlined above, Plaintiff's Motion to Compel (ECF No. 24) is **GRANTED**.

**SO ORDERED.**

Dated: July 23, 2021          s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE

---

[1] The Court's ruling is based on the state of the existing evidentiary record. Mr. Myles has testified that while he remembers that age discrimination was a "potential concern," he cannot recall whether Mr. Schankin asked his opinion about whether the termination of three employees constituted age discrimination. ECF No. 24-2, Page.ID 207. In revisiting this issue with Mr. Myles, preliminary questions should be asked concerning whether or not Mr. Myles recalls whether he offered any opinion as to the legality of what was being done to the three employees. If Mr. Myles does recall offering such an opinion to Mr. Schankin, Mr. Myles should be asked whether he believed he was offering such an opinion in his capacity as corporate counsel to Mr. Myles in his capacity as HR director. If those questions are answered in the affirmative, then, based on that record, Defendants may re-raise their objection based on the attorney-client privilege, Mr. Myles need not answer, and the parties should notify the Court.