UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GREG B. SCHANKIN,**<br><br>Plaintiff,<br><br>vs.<br><br>**COMMERCIAL STEEL TREATING CORPORATION,** and **HCI EQUITY PARTNERS**<br><br>Defendants. | 2:19-CV-12909-TGB-APP<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br>**(ECF No. 38)** |

The case before the Court involves charges of age discrimination. Plaintiff Greg B. Schankin alleges that Defendants Commercial Steel Treating Corporation and HCI Equity Partners fired him because of his age and to retaliate against him—all in violation of the federal Age Discrimination in Employment Act ("ADEA") and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). The Defendants challenge this suit, asking the Court to grant summary judgment in their favor. ECF No. 38. Having reviewed the briefing, supporting materials, and relevant case law, Defendants' Motion for Summary Judgment will be **GRANTED IN PART** and **DENIED IN PART**.

### I.   BACKGROUND

Greg Schankin was hired at Commercial Steel Treating Corporation ("Commercial Steel") in 1997. He worked as the Human

Resources Manager for Commercial Steel and its wholly owned subsidiary, Curtis Metal Finishing ("Curtis Metal"). He says that, until his termination, he was responsible for HR functions across Commercial Steel and Curtis Metal locations, including day-to-day oversight at each location.

In July 2015, HCI Equity Partners, a private equity firm, purchased a majority interest in Commercial Steel and Curtis Metal. ECF No. 38, PageID.361. HCI already owned Adept Industries and Tribar Automotive, two other Michigan-based manufacturing companies. Jeff Wilson, an executive officer at HCI, was appointed Chairman of HCI's "industrial portfolio group," which included Commercial Steel, Curtis Metal, Adept, and Tribar. Wilson Dep., ECF No. 38-4, PageID.428. In early 2018, Wilson assumed the role of CEO and President of Curtis Metal and Commercial Steel with the stated goal of resolving plant performance problems. *Id.* at PageID.430, 437–38. Wilson asked Carolyn Espinoza, Adept's Human Resources Manager, to help consult at Curtis Metal in an informal capacity in order to assist in addressing purported human resources issues at Curtis Metal. *Id.* at PageID.443. In May 2018 when she first went over to Curtis Metal, Espinoza was 46 years old. Espinoza Aff., ECF No. 38-6, PageID.523.

Shortly after Wilson was brought on, Schankin says he noticed that Defendants had "started getting rid of old people." Schankin Dep., ECF No. 38-3, PageID.407. Schankin specifically identifies Billy Landa, Ray

2

Lewandowski, and Norbert Yeager—all of whom were over 40 years old—as employees who were fired in April 2018. *Id.* at PageID.406–08. Schankin says that during the meeting when the terminations were announced, he raised the issue of age discrimination directly with Wilson. *Id.* at PageID.407.

Schankin further alleges that he was later asked to prepare severance agreements for two other employees—James Oliver, Sr. and Frank Whitehead—both of whom were over 55. ECF No. 41, PageID.598–99. When this happened, Schankin says that he once again brought the issue of age discrimination to Wilson. *Id.* at PageID.409. Afterwards, Schankin says, Defendants chose not to fire Oliver or Whitehead. *Id.* at PageID.408. For his part, Wilson denies that he spoke to Schankin about Whitehead or Oliver. Wilson Dep., ECF No. 38-4, PageID.473.

At some point thereafter, Wilson developed a plan to consolidate the HR function across Commercial Steel, Curtis Metal, Adept, and Tribar. In late July 2018, Wilson asked Espinoza to become HR manager for all four companies. Wilson Dep., ECF No. 38-4, PageID.454. Each manufacturing plant would also be assigned an "HR Generalist." *Id.* at PageID.454–56; Espinoza Aff., ECF No. 38-6, PageID.527. Wilson testified that, as part of this restructuring, Schankin's position was eliminated, and Espinoza assumed his job duties. Wilson Dep., ECF No. 38-4, PageID.454–56.

A few days after Espinoza was hired, on August 3, 2018, Schankin was terminated. Schankin Dep., ECF No. 38-3, PageID.406. According to Schankin, during his meeting with Wilson to discuss his termination, he told Wilson that he would be willing to accept one of the new "generalist" HR positions at one of the plants, but Wilson responded that Schankin was "too high up" for the position and "was gonna retire anyway." *Id.*

At the time of his firing, Schankin was 56 years old. ECF No. 41, PageID.595. Following Schankin's termination, Commercial Steel's general counsel Jeff Myles, age 66, was also discharged by Defendants. ECF No. 41, PageID.599. Myles as well as Craig Hoensheid, a Commercial Steel board member, and Scott Hoensheid, Commercial Steel's former CEO offered testimony expressing their opinions that the new management was terminating older employees in a targeted way.

On November 18, 2018, Schankin filed a charge with the EEOC alleging that he had been fired because of his age and in retaliation for opposing other age-related firings. ECF No. 38, PageID.360. On July 10, 2019, the EEOC issued a Dismissal and Notice of Rights. *Id.* Schankin filed this case on October 4, 2019. *Id.*

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact

4

such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. C*elotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to

the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

### III. DISCUSSION

**A. Age Discrimination**

"The Age Discrimination Employment Act ("ADEA") … prohibits employers from discharging an employee 'because of such individual's age.'" *Anderson v. Otis Elevator Co.*, 923 F. Supp. 2d 1032, 1054 (E.D. Mich. 2013) (Borman, J.) (quoting 29 U.S.C § 623(a)(1)). A plaintiff without direct evidence of discriminatory intent may still prove discrimination by establishing a prima facie case of age discrimination through "indirect or circumstantial evidence." *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012).

ADEA claims based on indirect evidence are analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must first establish a prima facie case of age discrimination. Once a prima facie case is established, the evidentiary burden then shifts to the employer to demonstrate that its actions were "legitimate" and "non-discriminatory." If the defendant can satisfy its evidentiary burden, the burden then shifts back to the plaintiff to prove the employer's stated reason was merely a pretext. *See Wexler v. White's Fine Furniture*, 317 F.3d 564, 547 (6th Cir. 2003); *Hendershott v. St. Luke's Hosp.*, No. 20-3128, 2020 WL 6256869 at *2 (6th Cir. 2020).

To establish a prima facie case of discrimination under the ADEA, Schankin must show that he: (1) was over 40 years old; (2) suffered an adverse employment action; (3) was qualified for the position he held; and (4) was either replaced by a person outside the protected class or was treated differently from similarly situated people. *See Smith v. Wrigley Mfg. Co.*, 749 F. App'x 446, 448 (6th Cir. 2018) (citing *House v. Rexam Beverage Can Co.*, 630 F. App'x 462, 462 (6th Cir. 2015)). In addition to his ADEA claim, Schankin also brings a claim under Michigan's Elliot-Larsen Civil Rights Act (ELCRA). The same *McDonnell Douglas* framework is also used to analyze ELCRA claims. *See Provenzano v. LCI Holdings*, 663 F.3d 809, 818–19 (6th Cir. 2011); *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009). Therefore, the Court's ADEA analysis is equally applicable to Schankin's ELCRA claim.

### 1. Prima Facie Case

Defendants do not dispute the first three elements of Schankin's prima facie claim, nor could they. Schankin was 56 when he was fired, termination is a quintessential adverse employment action, and Defendants do not dispute that Schankin was qualified for the position he held, though Wilson asserts that Schankin's performance at the time of his firing was below par. The dispute centers on the fourth element: whether Schankin was either replaced by a younger employee or treated differently from similarly situated employees.

Defendants characterize Schankin's claim as one based on a "replacement" theory. ECF No. 38, PageID.372–73. Defendants argue that Schankin was not replaced, but that his position was eliminated. Defendants then point to cases explaining that an employee is not "replaced" when a company undergoes a restructuring and the plaintiff's previously held position is eliminated. While there is case law distinguishing job losses caused by restructuring from standard employment terminations, the law also provides that, even in the context of restructuring, a plaintiff can still make out a prima facie claim of discrimination.

Schankin correctly explains that when a restructuring has taken place, "the fourth element of *McDonnell Douglas* is modified (heightened) to require some 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Shah v. NXP Semiconductors USA*, 507 F. App'x 483, 487 (6th Cir. 2012) (quoting *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Also, he does not dispute that Curtis Metal and Commercial Steel underwent a restructuring. But Schankin does not identify precisely what *additional* evidence of discrimination he relies upon to show that he was singled out and that his termination was improperly motivated.

As the Sixth Circuit has explained, the purpose of this heightened standard is to "ensure, in reduction of force cases, that the plaintiff has

presented evidence to show that there is a chance the reduction in force is not the reason for the termination." *Asmo v. Keane*, 471 F.3d 588, 593 (6th Cir. 2006). Thus, the same evidence will apply to both the "evidence of discrimination" element of the prima facie case and the pretext analysis.

The Court will therefore look to Schankin's evidence of pretext—the alleged pattern of discriminatory terminations and a comment Wilson made to him during his termination—to see whether it also allows for an inference of discrimination sufficient to satisfy the "additional evidence" requirement of *Barnes. See Cichewicz v. UNOVA Indus. Auto. Sys.*, 92 F. App'x 215, 222–21 (6th Cir. 2004) ("we find nothing in *Barnes*, to suggest that a plaintiff may never satisfy his or her prima facie burden by demonstrating … a pattern of 'reducing' employees over the age of forty").

### 2. Pretext

Defendants maintain that Schankin's position was eliminated in a restructuring. Schankin agrees that the restructuring happened. "Evidence of an employer's restructuring … satisfies the employer's burden of producing a legitimate, non-discriminatory reason for a plaintiff's termination." *Shah*, 507 F. App'x at 492.

With the restructuring supplying a non-discriminatory reason for the adverse action being taken against the employee, the burden shifts

9

to Schankin to establish that Defendants' stated reason was merely a pretext to disguise the real age-discriminatory reason for his firing. Generally, a plaintiff may demonstrate pretext by showing that the stated reasons for an adverse employment action (1) have no basis in fact, (2) were not the actual reasons for the adverse employment action, or (3) are insufficient to explain the adverse employment action. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). A plaintiff may also show pretext by offering evidence which "challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Id.* (internal quotes omitted).

Schankin does not dispute that the reorganization occurred—nor could he. He does not argue that the reorganization was insufficient to explain his firing: his job was indeed eliminated. So Schankin must offer some evidence that his termination was not actually motivated by the restructuring, but instead for some discriminatory reason. He is not required to *prove* Defendants' reason was false at this stage, but he must offer sufficient evidence of pretext that a reasonable juror could conclude that the stated reasoning was not the actual motivation for his firing. *Courtney v. Wright Med. Tech.*, No. 21-5683, 2022 WL 1195209, at *8 (6th Cir. Apr. 22, 2022) (citing *Brewer v. New Era*, 564 F. App'x 834, 842 (6th Cir. 2014)).

Schankin points to three sets of facts in attempting to show that the restructuring rationale for his firing was a pretext. First, Schankin contends that Defendants offered shifting justifications for his own termination. Next, he points to evidence that Defendants engaged in a pattern of terminating older employees before and after they fired him. Finally, he maintains that Wilson alluded to his age during the meeting in which he was terminated, commenting that he was "too high up" to take over the new "generalist" position at one of the plants and that he was "gonna retire anyway."

These contentions are considered in turn. An employer shifting its justification for firing an employee "calls the credibility of those justifications into question." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 540 (6th Cir. 2014) (quoting *Cicero v. Borg-Warner Auto.*, 280 F.3d 579, 592 (6th Cir. 2002). The Court will summarize what evidence there is as to such shifting justifications here.

Defendants have consistently maintained that they fired Schankin because of restructuring. Schankin was told he was terminated because HCI wanted to consolidate the human resources roles at the various industrial companies in its portfolio, which in turn was motivated by human resources problems at Curtis Metal and Commercial Steel. Defendants continue to maintain that justification. While there is also evidence in the record that Defendants had concerns about Schankin's recent performance in the HR role as a reason for not selecting him to fill

11

the new generalist HR position, that reason is not inconsistent with Defendants' restructuring justification. *See, e.g.*, *Shah*, 507 F. App'x at 495.

Next, Schankin points to the firing of several other older employees. Evidence that other older employees were also fired can serve as circumstantial evidence to prove discrimination, even when the sample size is small. *See, e.g.*, *Courtney*, 2022 WL 1195209 at *7 (finding that a jury should decide whether evidence that two other older employees were terminated supported a pattern of age discrimination by the employer) (citing *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1129 (6th Cir. 1998)).

Schankin says that in April 2018, "three long term employees … all over age 40" were fired, and that shortly thereafter, Defendants attempted to fire two more employees, both over 55. Schankin says that the second round of firings was called off when Schankin warned Wilson that this could constitute age discrimination. Schankin also points to the testimony of Craig Hoensheid, a Commercial Steel board member; Scott Hoensheid, Commercial Steel's former CEO; and Jeff Myles, Commercial Steel's then-general counsel. Schankin says that Craig and Scott Hoensheid both expressed their opinions that the new management was targeting older employees for termination. Myles offered similar testimony.

12

Defendants object to all of this testimony, arguing that it is inadmissible hearsay and is not based on personal knowledge. Schankin admits that he was personally unaware of the circumstances behind the terminations. *See* ECF No. 38, PageID.374–76. Myles made a similar admission. *Id.* at PageID.376. Thus, their personal opinions about the reasons for those terminations are inadmissible for lack of personal knowledge. *See* Fed. R. Evid. 602. Schankin also says that Scott and Craig Hoensheid told Schankin they felt the new management was targeting older employees. But as Defendants point out, this is hearsay. Schankin and Myles' opinions, and the Hoenshieds' hearsay opinions, that the actual and attempted firings were motivated by age discrimination are not admissible, and the Court will not consider them.

However, testimony pertaining to personal observations as to the fact that the terminations happened—who was terminated and at what age—is admissible. *See Cichewicz*, 92 F. App'x at 219–20 (considering affidavits and deposition testimony specifically identifying older employees terminated during reorganization); *Courtney,* 2022 WL 1195209 at *7 (considering deposition testimony alleging a pattern of terminating older employees and specifically identifying older employees).

Schankin testified that "up until [his] termination, [he] didn't see [Wilson] fire anyone younger." Schankin Dep., ECF No. 38-3, PageID.414. Before Schankin's firing, two employees "older, above 55"

13

were threatened with termination. *Id.* at PageID.407. Two employees, both 64, were terminated, as was another employee who had worked for 30 years—and thus was presumably at least 50. *Id.* at PageID.407–08. Following Schankin's termination, Myles' position was eliminated, and he left the company at age 66. Myles Dep., ECF No. 38-7, PageID.541.

Defendants do not dispute that these terminations occurred, arguing instead the terminated employees all "supervised the areas where Curtis [Metal] was experiencing extreme problems." ECF No. 38, PageID.377; *see also* Wilson Dep., ECF No. 38-4, PageID.440 ("all these terminations were part and parcel of … [the] recommendation to restructure the Curtis Metal Finishing operation.")

The record therefore reflects that five people over 40, Schankin included, were discharged by Defendants and another two were nearly discharged but were ultimately retained. This evidence tends "to suggest a pattern of targeting only older individuals for discharge." *Cichewicz*, 92 F. App'x at 220. However, the impact of this evidence must be balanced against the fact that the record contains no evidence about the general age make-up of Curtis Metal's employees, nor information about who else was fired, retained, or replaced with younger workers. Without more, the Court does not put great weight on these facts for the purpose of this motion.

Finally, Schankin points to a comment Wilson made during the meeting in which Schankin was terminated. Schankin says that, when

14

he told Wilson that he would be open to taking one of the HR generalist positions, Wilson told him that he was "too high up" for such a position and said "you're gonna retire anyway." ECF No. 41, PageID.600.

Comments allegedly suggesting an employer's age bias are evaluated by considering four factors, none of which is dispositive: (1) whether the statements were made by a decision-maker; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002).

Here, the totality of circumstances is such that a reasonable juror could conclude that the comment evinced age bias. The first and fourth factors weigh squarely in Schankin's favor. As to the first, the statements were made by a critical decision-maker. As CEO, Wilson had the power to make employment decisions. And as to the fourth, the comments were made at the very moment of Schankin's termination. As to the second, a reasonable juror could conclude that the statement was related to the decision to terminate Schankin: he was not selected for the HR generalist position because he was "gonna retire anyway" and was "too high up" for the position, which could refer to rank seniority, years of experience, or age,. Both of these statements could be reasonably interpreted as referring to Schankin's age. Finally, while the comment could be

15

characterized as a single or isolated incident, it is not particularly ambiguous or vague.

In sum, while the comment only occurred once, it was made at the moment of Schankin's termination by the most important decision-maker and could readily be interpreted as a statement that age motivated the decision not to retain him.

Defendants maintain that "[t]he mere fact that long-term, older employees were let go during a time when their plant was experiencing extreme and perhaps fatal problems with production, and logistics, provides no evidence of discrimination." ECF No. 42, PageID.627. But Schankin has raised a sufficient dispute of fact requiring resolution by a jury. On this record, it would not be unreasonable for a juror to conclude that Defendants were terminating older employees under the guise of restructuring. On the other hand, a reasonable juror could also accept Defendants' explanation that the restructuring was the reason for all employment decisions, and that it incidentally affected positions held by older employees.

Because there is a genuine issue of fact that the jury must resolve, Defendants are not entitled to summary judgment on Schankin's age discrimination claim.

## B. Retaliation

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims as well, though the elements necessary to establish a prima facie case differ. To establish a prima facie case of retaliation Schankin must show that (1) he engaged in protected activity; (2) Defendants knew he engaged in protected activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See Fox v. Eagle Distrib. Co.,* 510 F.3d 587, 591 (6th Cir. 2007).

### 1. Prima Facie Case

Defendants contend that Schankin fails on the first element, because he did not engage in protected activity as a matter of law, and on the fourth element because he relies solely on temporal proximity to show causation. As to the second element, Defendants do not dispute they were aware of Schankin's activity—only that such activity was not protected. They also do not dispute the third element, that he suffered an adverse action.

As to whether Schankin engaged in protected activity, Defendants effectively encourage the Court to adopt the "manager rule," a rule of decision that applies to claims under the Fair Labor Standards Act. That rule provides that "conduct undertaken while performing assigned human resource jobs and undertaken for the purpose of protecting the

17

interests of the employer is not protected activity." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 346 (6th Cir. 2021) (internal marks and citation omitted). Thus, Defendants argue, Schankin raising concerns about age discrimination in the course of his human resources job does not constitute protected activity.

But in *Jackson*, the Sixth Circuit explicitly rejected the application of the manager rule in Title VII cases. *Id.* Title VII law is a source of authority for interpreting the ADEA's anti-retaliation clause. *See Fox*, 510 F.3d at 591. So the manager rule does not apply in the age discrimination context either. Accordingly, Schankin has shown that he engaged in protected activity.

To satisfy his burden to show a causal connection between his complaints and his firing, Schankin points to the relatively short time between when he had complained of age discrimination and when he was fired. Although there is a dispute over how often Schankin raised the issue and when Wilson learned that Schankin had complained, all agree that Schankin's last comment to Wilson about age discrimination was in May 2018. ECF No. 42, PageID.629. Schankin was fired about three months later.

For causation purposes, "temporal proximity is measured from the time an employer learns of a protected activity to the time of the subsequent adverse employment action." *Garrett v. Mercedes-Benz Fin. Servs. USA,* 331 F. Supp. 3d 699, 719 (E.D. Mich. 2018) (Edmunds, J.).

18

The Sixth Circuit "requires a very brief interval between protected activity and adverse action before [a court] permits a plaintiff to demonstrate causation *solely* on the basis of temporal proximity." *Sharp v. Aker Plant Servs. Grp.*, 600 F. App'x 337, 341 (6th Cir. 2015) (emphasis added).

A lengthy period between the protected activity and adverse action does not foreclose finding causation. But "the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [their] claim with 'other evidence of retaliatory conduct to establish causality.'" *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

About three months elapsed between Schankin's last complaint and his termination. The Sixth Circuit has found that shorter intervals are, without more, insufficient to establish causation. *See, e.g.*, *Kean v. IT-Works*, 466 F. App'x 468, 471 (6th Cir. 2012) (finding that two-and-a-half months was not enough) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000) (holding that one month could not support a causal inference without more); *Mickey*, 516 F.3d at 524 (collecting cases). Because Schankin can rely only on temporal proximity to draw a causal connection between his protected activity—complaining of age discrimination—and his termination, and the length of time between the two events is longer than the Sixth Circuit has allowed to draw such an

19

inference, he must present other evidence beyond the mere closeness of time between the two events to permit an inference that one caused the other. But Schankin cannot point to any additional evidence other than temporal proximity to suggest that the reason he was fired was because he complained about age discrimination. Accordingly, Defendants are entitled to summary judgment on Schankin's retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** It is **GRANTED** as to Plaintiff's retaliation claim and **DENIED** as to Plaintiff's discrimination claim. Plaintiff's retaliation claim is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: August 30, 2023   s/Terrence G. Berg
　　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE